(No. 23757.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM CLEAVER *et al.* Plaintiffs in Error.

*Opinion filed December 10, 1936.*

HARRY F. JOHNSON, and ALFRED S. PFAFF, for plaintiffs in error.

OTTO KERNER, Attorney General, WARD P. HOLT, State's Attorney, and A. B. DENNIS, for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

A writ of error has been sued out to review a judgment of conviction of the circuit court of Marion county against William Cleaver and George Myer for burglary. The indictment charged that both defendants broke and entered a building owned by the Goodale-Puffer Grocery Company in Centralia with intent to steal the goods and chattels of said company.

On the night of February 23, 1935, Joe Finley, a police officer, was making his rounds and passed alongside the Goodale-Puffer Grocery Company building, and when he had reached the rear of it he heard sounds as if someone was at work with a pick. A garage was attached to the main building of the grocery company. The officer noticed that the outer door of the garage was broken open. He proceeded to the door and turned on a flashlight. He testified that he saw men at work picking bricks out of the wall of the main building. He told them to hold their hands up and keep their backs toward him. He placed them under arrest and then took them to the police station, where they were turned over to the chief of police. The men under arrest were the defendants in this cause.

The prosecution relies not only upon the testimony of the police officer but also upon certain admissions of guilt made by each of the defendants. On the other hand, the defendants denied they were arrested in the building of the grocery company and testified they had been accosted by the police officer on a railroad track and were arrested on suspicion. They admit that they confessed to the crime

charged, but assert their confessions were obtained by the violence and threats of the Centralia chief of police.

The testimony in behalf of the People discloses that as soon as the defendants were taken to the police station the chief of police questioned them about being in the grocery company building, and they said "they were out of money and were trying to get just anything, they had to have something." The chief called Prentiss Puffer, vice-president of the grocery company, and told him his building had been broken into and that the guilty persons were under arrest. Puffer immediately went to the building, and after observing the broken door and other physical conditions about the building went to the police station, where he saw the defendants.

Police officer Bounds testified that he was present when the defendants were brought to the station and that he heard the defendants admit they were in the grocery company building; that they intended to steal something, but did not know what they would get when they got inside.

A few days afterwards the defendants were taken by deputy sheriff Simmons from the police station in Centralia to the county jail, in Salem. He testified that he talked to both of them, and that they told him they had made a confession of guilt to the police in Centralia because they had been caught in the building and there was no use to deny it. When the defendants arrived at the county jail sheriff Pitts had a conversation with them, and they told him they were picked up by officer Finley while they were cutting on the wall of the grocery company. All of these circumstances leave no room for reasonable doubt that the defendants were caught in the act of committing a burglary. Their bare statement that they were arrested on the railroad tracks has little force against the testimony of disinterested witnesses and the physical facts relating to the breaking of the garage door and the removal of bricks from the wall. The record contains sufficient evidence to

warrant the conviction even without the testimony of the defendants' admissions of guilt.

But it is urged that the trial court erred in admitting the confessions, because they were involuntary. The defendants testified they did not admit their guilt to the police officers upon their arrival at the station; that they denied it; that thereupon they were beaten and slugged by the chief of police at various intervals; that their eyes were blackened, and finally, out of sheer desperation, they admitted to the police officers they were guilty. In explanation of their admissions to the sheriff and deputy sheriff, the defendants say that they made them because the chief of police had threatened to come over to Salem and beat them up again if they did not confess to the sheriff.

The People insist that the admissions were made voluntarily and not as a result of coercion, and the testimony on the part of the People is that when the chief of police first questioned the defendants he ascertained that they had stayed at a hotel in Centralia the night before the burglary. He then went to the hotel, where he interrogated the night clerk, who told him that men of the same name had stopped at the hotel with a man by the name of Kelly. The chief of police had the clerk go to the police station, where he identified the defendants as the men who were with Kelly. Subsequently the chief of police endeavored to gain information as to what connection, if any, Kelly had with the burglary. The defendants refused to give him information, and he admits that he then struck the defendants. How much the severity of his treatment has been magnified by the defendants, if any, or minimized by the chief of police, if at all, is entirely immaterial if they had previously voluntarily confessed their guilt. The question of whether a confession was voluntarily made in the first instance is for the court. (*People* v. *Fox*, 319 Ill. 606.) Whether the confession is true or false is for the jury. Both of these questions were resolved against the defend-

ants. It seems, indeed, strange that the defendants would have admitted their guilt to the deputy sheriff when on their way to the county jail, and afterwards to the sheriff of the county, simply because of a threat that the chief of police would invade the county jail and beat them up again if they did not confess. It is far more reasonable to believe that when they had gotten beyond the custody of the chief of police they would have sought safety and protection from the sheriff.

Complaint is made that the trial court sustained objections to proper questions asked by the defendants' counsel. For instance, one of the defendants was asked about the physical condition of the other defendant at the time they were taken from the police station. The witness said, "It was pretty bad." The court allowed a motion to strike. In doing so there was no error, because the description was relative, only, and was an expression of a conclusion. Nevertheless, both defendants gave minute descriptions of the bruises and injuries which they claimed they received. They were asked why the officer beat them, and other questions of similar import calling for conclusions, and the court correctly sustained objections to them. We find no error in the court's rulings on evidence.

The substance of defendants' refused instruction No. 1 was contained in their instruction No. 9.

It is urged that People's instruction No. 6 is erroneous because it used the word "defendant" instead of the word "defendants," and that it therefore tended to mislead the jury and to apply the law contained therein to only one of the two defendants. The particular instruction complained of cannot be made the subject of such criticism. It stated that "the court instructs the jury, as a matter of law, that to constitute the crime of burglary as charged in the indictment it must be shown that the defendant broke and entered the building alleged to have been burglarized with the intent to commit larceny." It is impossible for us to

conceive how the use of the singular form of the word instead of the plural might tend, even in the slightest degree, to mislead a jury.

The instruction containing the form of verdict is complained of because it uses the plural form "defendants" and did not tell the jury they might find one defendant guilty and the other not guilty. No prejudice could have arisen on the trial from the instruction. The charges and the evidence against each defendant were identical and the defense interposed by each defendant was exactly the same. There was no imaginable basis for a verdict against one defendant and for the other defendant.

The guilt of the defendants was conclusively proved, and the conviction must be sustained.

*Judgment affirmed.*