26271. SOUTHERN GROCERY STORES INC. v. KELLEY.

DECIDED NOVEMBER 16, 1937. REHEARING DENIED DECEMBER 16, 1937.

*Harold Hirsch, Marion Smith, M. E. Kilpatrick, Hamilton Lokey,* for plaintiff in error.

*Ben C. Williford,* contra.

BROYLES, C. J. Mrs. M. E. Kelley brought suit against Southern Grocery Stores Inc. (operating under the name of "Rogers"),

alleging that as an invitee she went into a store of the defendant corporation to buy groceries; that a place on the floor of the store was "buckled up so that the edges of said boards stood up about 2½ inches higher than the general surface of the floor;" that this place had on it a "slick and oily substance" which "covered a circular area about 20 inches in diameter;" that there "was a deep dark shadow on the floor . . caused by poor lights, counters, and displays;" and that these conditions, negligently maintained by the defendant, caused the plaintiff to fall and injure her left knee in certain described particulars. The defendant denied all material allegations of negligence and denied liability. The jury rendered a verdict for the plaintiff, and the defendant assigns error on the overruling of its motion for new trial.

Special ground 4 of the motion for new trial complains that the court erred in admitting, over objection, evidence that the floor of defendant's store where plaintiff fell had been repaired shortly after plaintiff's fall. The plaintiff testified that she lived just around the corner from the defendant's store; that while she was ill as a result of this fall she could hear hammering in the store while the floor was being repaired; that when she got out, more than a month after her injury, she saw that the floor had been repaired; that the defendant started the repairs "the day after" she was hurt, "and in a very short time after that they replaced the whole floor." The ground is without merit, for the reason that the evidence was not admitted as alleged in the ground. On the contrary, the ground itself shows that the evidence was finally ruled out. In reply to counsel's objection to the evidence, the court first said, "If it was repaired shortly after it might be admissible," but, after the evidence in this respect was completed, the court unqualifiedly ruled it all out. The following rulings of the court, as shown by the ground, show that the evidence was finally ruled out: "In view of this testimony *I rule out about the repairs.* She says it was more than a month before she was down there, and *I rule* [*out*] *evidence about the floor being repaired;* and gentlemen [of the jury] you will *not consider that evidence,* as I understand from the evidence she was laid up a month or more, and she could not know about the repairs. . . Something that happened when she was in bed. I don't think she could testify. . . Hammering would not be sufficient to prove the facts. . . Gentlemen of the

jury, you are not to be influenced by *any testimony of this witness as to repairs* she may have testified about, and you are not to be influenced *in any way,* and *do not consider it* in arriving at your verdict." (Italics ours.) Regardless of what the judge said as to the admissibility of evidence of repairs made shortly 'after the fall of plaintiff, he finally ruled out all the evidence as to the repairs. Moreover, in the next ground of the motion for new trial, counsel for the plaintiff in error admits that the court instructed the jury that evidence as to the repairs had been ruled out.

Ground 5 of the motion avers that the court erred in refusing to declare a mistrial because counsel for the plaintiff, in the presence of the jury, argued, in effect, that the floor of the defendant's store at the place where the plaintiff fell was later repaired by putting therein a new floor at that point. The ground shows that "the court thereupon instructed plaintiff's counsel not to argue or mention this evidence, and instructed the jury not to consider this argument as *the evidence had been ruled out."* (Italics ours.) The argument was not so prejudicial as to demand a declaration of mistrial; especially so where the court ordered counsel not to argue or mention such evidence, and instructed the jury not to consider the argument. Indeed, the instruction of the court was calculated to *impress* upon the jury the fact that all evidence as to repairs had been ruled out, and that they should not consider the same in arriving at their verdict.

The court did not err, as alleged in ground 6, in permitting the plaintiff's husband to testify that when he went to the store about seven o'clock on the night of the injury, and about two hours after the injury, there were places on the floor that were buckled, that it was dark when he went down there, and that there was something smeared up on the floor. While it was dark when plaintiff's husband went there, there is no evidence that it was dark in the store, but, on the contrary, the store was open and people were in there, and presumably the store was lighted up. Moreover, before the plaintiff's husband examined the floor he asked where his wife had fallen. The evidence was material to the issues raised by the pleadings and the evidence, since five witnesses for the defendant testified that the floor was not slippery or buckled at the time and place the plaintiff fell.

Ground 7 alleges that the verdict is excessive. There was ample

evidence to show that the injury to the plaintiff's knee is painful and permanent, and that it has already lasted three or four years. Witnesses testified that plaintiff's knee made a grating noise when she walked, and this was demonstrated in the presence and hearing of the jury. Dr. Charles R. Hancock, assistant surgeon for the Southern Railroad, who treated the plaintiff, testified in part as follows: "Her kneecap was torn loose, and then she had an injury to the sacrum, just above the junction of the backbone and pelvic bone. I think the injury she had to her knee is permanent. *I think she will be crippled in that knee as long as she lives.* As to the treatment for an injury of that kind, there would not be very much you could do for it except put a brace on it. I have seen quite a number of those cases, and you don't get much good results from the healing of them. About the best thing you can do for them is to use a mechanical brace of some kind. . . The chances are *she will have quite a lot of pain the rest of her life."* (The plaintiff's knee is exhibited to the jury.) "You ask me to put my finger on that muscle. In my opinion *it has been torn loose from the kneecap* around there. . . You ask me to put my hand on the kneecap and ascertain whether or not there is a grating when she raises her leg, and there certainly is. You ask me if in my opinion I believe the condition of her knee will ever get better. I don't believe it will. *I believe she will have trouble with that knee always.* I think she has been that way three or four years, it seems to me, now, since I first saw her." (Italics ours.) There was evidence that other doctors had also treated the plaintiff since her fall in the defendant's store, and that she suffered great pain with her knee. She testified: "Nobody on earth could begin to tell the pain I have had. I have not been able to sleep at night; the only way I can sleep any is to have my left foot hanging off the bed. I have to let it hang off the bed, or if I move my foot it wakes me and I have to move, and the only rest I can get is to have my left foot hanging out over the bed and sleep on my back; that is the only way in the world I can sleep." In the light of the foregoing and other evidence as to the extent of the injury, coupled with the fact that the plaintiff has written off $3000 from the verdict, thus reducing it to $7000, we can not say that the verdict is excessive.

Ground 8 is based on alleged newly discovered evidence that the plaintiff had injured her knee before the time she fell in the de-

fendant's store. It is doubtful whether the defendant has met the requirements relative to newly discovered evidence, as it appears that counsel for the defendant heard of the alleged previous injury to plaintiff's knee *before* the trial. However, giving the defendant the benefit of the doubt as to using due diligence in ascertaining about the evidence, we have considered this ground. The affidavits of Mrs. Charles P. Simpson and Miss Agnes Parker, in support thereof, set out that the plaintiff, who before her marriage was Miss Ollie Mae Bearden, had an injury of the left knee and knee-cap during 1924 and 1925, and that the father of these two deponents, Dr. Will H. Parker, now deceased, had treated the plaintiff's knee. Attached to the affidavits was a photographic copy of sheets of the ledger of Dr. Parker showing original entries on the account of John Bearden, father of the plaintiff. As a counter-showing the plaintiff introduced affidavits of nineteen reputable persons, showing that plaintiff did not have any knee injury before the one for which this suit was brought. These affidavits in the main were given by citizens of Toccoa, where the plaintiff lived during these years, and included doctors, police officers (including the chief of police), storekeepers, and persons in other lines of business and various walks of life. The plaintiff made an affidavit in which she testified, that she never sustained any knee injury prior to the one sued for; that Dr. Parker had given her medicine for minor ills, shots for typhoid, a blood tonic for boils, and treated her one time for a boil on the calf of her right leg; but at no time had she sustained any injury or had Dr. Parker treated her for any injury to her left knee. She further testified in her affidavit that the Parker sisters, in making their affidavit, had plaintiff confused with her sister Myrtle, whose knee Dr. Parker did treat. The account of John Bearden with Dr. Parker, which was introduced by the defendant, tends to corroborate the affidavit of the plaintiff. It shows that Dr. Parker had treated various members of John Bearden's family, and that Dr. Parker had given the plaintiff medicine and had treated her leg (as plaintiff had sworn); but that the *knee* treatment was for plaintiff's sister Myrtle. Under the counter-showing made by the plaintiff, and the discretion vested in the trial judge in such matters, and motions for new trials based on newly discovered evidence not being favored by the courts, clearly there is no merit in this ground of the motion.

*Youmans* v. *State,* 54 *Ga. App.* 223 (187 S. E. 605); *Thompson* v. *Growers Finance Cor.,* 49 *Ga. App.* 119 (2) (174 S. E. 192).

Careful consideration of the entire record discloses no error of law which would authorize a reversal of the judgment. The issues involved were of fact which were passed on by the jury. The defendant introduced evidence which would have authorized a verdict for it, but by their verdict the jury evidently rejected this evidence. The plaintiff introduced evidence to show that the injury to her knee was caused by the fall in the defendant's store, and that the fall was due, not to ice on her shoes as claimed by the defendant, but to the floor being buckled up, having grease on it, and being poorly lighted at this place; that the manager of the store admitted at the time of her fall that "this is a bad place in the floor; I have tried to get the company to repair it for some time, and I can not get them to do it;" that the injury damaged her health, prevented her from performing her household duties, caused her extreme pain, and was permanent. The jury by their verdict said this was the truth of the case. Indeed, it is undisputed that the plaintiff fell and sustained some injury at the time and place alleged; and even if she had sustained a previous injury, she would be entitled to recover for this injury if it were caused by the negligence of the defendant, as the jury evidently determined. The record shows that this is the second verdict in this case, and the brief of counsel for the plaintiff in error (replying to an argument of opposing counsel) states that both verdicts were in favor of the plaintiff. This statement is not denied. If this be true, then two different juries, after hearing the evidence given under oath, determined that the plaintiff should recover. "Touching the general grounds of a motion for a new trial, and the special ground that the damages found are excessive, we need only say that the evidence is not such as to warrant our interference, this being a second verdict, and the trial judge being satisfied to let it stand. . . Our duty is best performed by leaving [the] case to stand as the jury and the presiding judge have settled it." *Henderson* v. *Fox,* 83 *Ga.* 233, 245 (9 S. E. 839); *Southern Ry. Co.* v. *Tankersley,* 3 *Ga. App.* 548 (60 S. E. 297). No error of law appearing, and there being evidence to authorize the jury's finding on the issues of fact, the court did not err in overruling the motion for new trial. *Judgment affirmed. MacIntyre and Guerry, JJ., concur.*